Yes, Your Honor. Good afternoon. My name is John Lambros. I'm here on behalf of Mr. Downing, the petitioner below, and the appellant in this Court. This Court, sitting as a Federal habeas court, cannot hear a question of Federal constitutional error that was presented in a State court if the highest State court did not hear and review that error on the merits based on some adequate and independent State procedural rule. The State procedural rule that the State of Nevada invoked in the proceedings below to preclude review of what I characterize as the AIC claim, the claim that precluded the request by Mr. Downing to get an expert to help him and his attorney evaluate and rebut the DNA evidence, was a rule that, in the many years I've been practicing habeas corpus law in the State of Nevada, I'd never even known existed. It was not one of the typical rules of preclusion under Nevada State law. I'm confused about something on that. If I recall correctly, there are a lot of cases I may not recall correctly, but if I recall correctly, Downing did not actually make a motion to permit him to have a DNA expert. He made a motion about something else. And on page 4 or 5 of the motion, he said, and if I don't win on this, I'd like my own expert. Right. So he never made a separate motion on it. That was three years before trial. And in all the trials I've ever done as a lawyer or as a judge, before the trial starts, at the final pretrial, the trial judge always says, is there anything else? And if a person doesn't say, yes, Your Honor, you haven't ruled on this, I need to have a ruling, then it's gone. It's waived. It seems really elementary. What am I missing here? Well, this – two responses to that, Judge Kleinfeld. So first, this case has a fairly tortured procedural history with regard to Mr. Downing's representation of counsel. When that motion was filed, and I believe it was Exhibit 27 to the amended petition – or excuse me, I'm sorry, Exhibit 9 to the amended petition. It was filed in May. It was filed by – or 95. It was filed by his first lawyer, Mr. Kevin Williams. Mr. Williams then came off the case, and Mr. Downing was given another attorney. And then at some point, for about a three-month period, Mr. Downing exercised his rights under Ferretta and was pro se for about three months. And in direct response to your question, when he was pro se in May of 1997 – and unfortunately, I did not excerpt this hearing, but it's found in the record at Exhibit 27 to the amended petition. There was a brief hearing where Mr. Downing appeared for some reason, and only, you know, only Las Vegas State court practice could explain this. But Mr. Williams, his lawyer who had been conflicted out three years ago, appeared with him. But Mr. Downing on the record was pro se, and he said just exactly – there was a colloquy between the judge and Mr. Downing at that point about that particular request for expert assistance. And Mr. Downing said, well, I still want to do that. I still want expert help on this to help rebut this DNA evidence, and I'll be supplementing that. Well, then in June of 1997, another – yet another attorney got on board, Mr. Kristiansen, and Mr. Kristiansen never supplemented the motion. The motion never got ruled upon. I can sure see why a judge would leave it alone if the attorney didn't say anything. The problem with getting a DNA expert is he can sink your case. Well, he can sink your case, but he can also make your case. And if he sinks your case, you just don't use him. But there's no excuse not to at least get the expert to evaluate the evidence. I'm sorry. Then the other side subpoenas him. Well, the other side subpoenas him, but that doesn't necessarily mean that the other side is entitled to use that expert's, you know, inculpatory evidence that was found during the defense's investigation. I certainly would protest against that. I think the – Assume you can get over the waiver hurdle. Right. What in the record would show us what impact the appointment of this expert would have on the outcome of the trial? Well, that would be a decision for the merits court to review. But, you know, I really can't answer that question because no expert was ever retained to evaluate the presentation of the State's forensic evidence. You can't even tell us by example or hypothetical what impact it would have had? Well, obviously, if the DNA – if the analysis that the DNA expert that the State put together was flawed in some way – and, again, I wish I could answer that, Judge Hawkins, because – but I can't because, you know, we never have retained an expert to evaluate that evidence because we've been, you know, up against this procedural hurdle and haven't really had, you know, the ability to expend those resources. It's a little bit like – isn't it like a motion for a new trial? When you make a motion for a new trial in the civil setting, and I think also in the criminal setting, you're supposed to demonstrate what it is that would happen if you were given the relief you asked for. Right. Is there no burden on a Petitioner at all to demonstrate to a trial court or an appellate court what impact this expert might have on the – or might have had on the outcome of the trial? I don't think that there's any – you know, when you think about the issue that's before this Court today that was briefed by the parties below, the only question is, was the default adequate? And if the default was adequate, in other words, the imposition of old Aztec mine versus Brown to preclude appellate review, when all the other cases in the State of Nevada, starting with McCulloch and cases prior to that, and observed by this Court in Korner v. Reed. I thought all those other cases said was Nevada Supreme Court says even if it was waived, we can review it if we want to. But that doesn't mean it's not waived. Yeah, but if the rule is predicated solely on the discretion of the highest State court, then it's not an adequate rule under this Court's decision in Morales v. Calderon. So if, you know, if the rule is just one that is predicated on the whim or caprice of the highest State court, it's not adequate. It cannot preclude – excuse me. It cannot preclude Federal review of a Federal claim. I mean, otherwise, you would restrict the writ. And that's what Coleman v. Thompson, you know, tried to warn or – And it's not an adequate State rule if the State supreme court retains discretion not to apply it in cases where it would work an injustice? Right. And I think the Nevada supreme court has said that in Riker v. State, the case that I filed with this Court about a week ago in my 28J letter. Your argument is it must be uniformly applied. It must be blindly applied. Well, it must be – first of all, it must apply. Without exception, blindly applied. No. Well, first of all, it must apply. And my first argument is it doesn't apply. This old Aztec v. Brown doesn't apply to a case, a criminal case, where constitutional error is asserted on appeal and not presented properly below. That's the issue. And every – The issue is, do you want to remand under Ryans v. Weber? No. No. And I think that that was the issue that this – one of the certified issues that this Court – I'm just asking you. No. You don't want it. No. And I think my letter brief – I tried to make that clear in my letter brief. Lost my train of thought. Oh. My first position, Judge Hawkins, is that, first of all – Aztec doesn't apply. Doesn't apply. And that if it does apply, then it's not – certainly wasn't well established under this Court's decision in Collier v. Baer. It couldn't have been well established. But old Aztec or not, you're asking us to provide relief based on a request never made at the trial level. Well, yeah, well – That's correct, isn't it? Yeah. The McCulloch line of cases stand for that. And I think I've got a stronger case, and because my client did present this to the trial court, it just kind of got lost. And I want to kind of clarify one thing that I might have left open with Judge Kleinfeld about the waiver. And I tried to cover this in my reply brief. I do not believe that even if this were to be – that this couldn't properly be construed as a waiver, because we're talking about a constitutional right that was never waived on the record in a knowing and voluntary way by Mr. Downing. And I think Boykin stands for the fact that you cannot – you can't find a waiver on a silent record, and that's what this was. I meant to try to retain some time here, and I notice I only have 45 seconds left, so if the Court would allow me to reserve that. All right. Thank you. May it please the Court. My name is Joseph Long. I represent the State of Nevada. The Office of the Attorney General responded in this case. I'm the youngest guy up here, I think, and I'm having trouble hearing you. Could you speak up a little bit? I'm sorry, Your Honor. I will do my best. I would like to start. Maybe it's better we don't hear you. Would you like me to sit down, Your Honor? Go ahead. I'm sorry. I'll try to speak up. I'm a little nervous. It's my first appearance here. It's my pleasure to be before this Court. I would like to start by making the observation that Mr. Lambros, in putting forth the position that his client would take with his Court, is that one of the observations I would like to make is it is well-known that fact-finding by the Nevada Supreme Court is owed deference by this Court, and when that Court makes a decision or determination, this Court should get a deference. And when we're talking about procedural bars that are imposed by the State Courts below, it's necessary that if we're going to compare cases and seeking inconsistent application, we need to compare cases that are comparing similar bars, apples to apples, as it were. Now, in this case, with respect to Mr. Downing, the Supreme Court of Nevada imposed a bar under old Aztec v. Brown that found that this case had been abandoned, and the pointed questions of this Court have indicated that there is sufficient information in the record to show that, and I'd like to enlarge upon that. But I'd also like to point out that Mr. Lambros has discussed a number of cases that have to do with the contemporaneous objection rule or waiver or some other procedural bar that is imposed, and none of the cases presented by Mr. Lambros address the precise procedural bar that was invoked by the Nevada Supreme Court below on this case. Now, with respect to the factual recitation, Mr. Lambros, I'd like to enlarge a bit on that. As this Court has observed in your questioning, this motion to exclude DNA evidence was filed on May 5th of 1995. Nothing further was done. Kevin Williams was the attorney that was representing Mr. Downing at that time. Now, at a subsequent hearing about two years later, in a crowded courtroom, you'll find in the record reference to Mr. Williams. Mr. Williams wasn't representing Downing. He was in a crowded courtroom. The judge there, Jeffrey Sobel, was familiar with Mr. Williams, and he referred to him in the context of a colloquy between himself and Mr. Downing regarding the issue at hand, and Mr. Williams gave a response. And Mr. Downing, who was the person under Ferretta, he ultimately decided to do so with the Court. And when, during that hearing, he let the Court know that the reason that he wanted to do that, and that is set forth in Exhibit 18 to these proceedings, Mr. Downing said, I will better facilitate in bringing forth the issues that I desire the Court to hear and to rule upon that deals with certain jurisdictional as well as other issues under the statutes which I believe were inappropriately filed. Mr. Downing filed a motion in proper person for expert fees. He did not delineate or detail the type of expert that he wanted. In court, the State opposed that, and in court at the hearing, the judge asked Mr. Downing specifically, what type of expert do you want? And Mr. Downing said, I'd like an eyewitness expert. And the Court said, well, I don't know if you're entitled to that. Now, there are others that you'd be entitled to, but I don't think you're entitled to that. But he asked him to clarify, and ultimately, the Court denied that motion. Now, there was subsequent ---- It wasn't even a DNA expert. Pardon me, Your Honor? It was not even a DNA expert. No, Your Honor, it was not. And he, further on in the proceedings, and by further on, I mean about six or seven months later, he said, I'd like an eyewitness when counsel had been appointed again, and Mr. Christiansen was now representing Mr. Downing. And the Court ordered all parties to supplement their motions, pretrial motions. And the supplement filed by Mr. Christiansen again addressed only the eyewitness expert. And in that motion, Mr. Christiansen made the statement that the eyewitness testimony in this case is the crux of the case. No one mentioned DNA. Mr. Christiansen didn't. Mr. Downing didn't. And it was not mentioned again. Do you happen to recall what was meant by eyewitness expert? Is that somebody like Elizabeth Loftus, a scientist who testifies about reliability of eyewitness identifications? That's correct, Your Honor. The case, in fact, that was the crux of this case, in that the victim and her friend were attacked. This isn't a DNA expert who says, oh, you ran the test that was popular last year, but this year everybody uses this new kind of test. No, Your Honor, it did not. It had to do with the accuracy of an identification in a stressful situation under time constraints. And the bar here, as I said in the outset in my remarks, the bar here has to do with finding that Mr. Downing abandoned his claim. He didn't waive it. He didn't fail to object. He didn't do any of the other things that are the heart of the cases that Mr. Lambros relies on. The theory is, is that he mentioned it earlier in the proceedings and then it never came up again. In fact, Your Honor, this motion, which was the motion to exclude, did come up at a later point. And the court, the discussion went as follows, because this motion had Lane fallow for some time. An excerpt of record reference, as long as you're reading. Yes, Your Honor. It would be Exhibit 27 on about page 4. The court is asking Downing. And we don't have things indexed that way. Do you have the excerpts of record number? Oh, I'm sorry, Your Honor, I don't. I can certainly get it for you. Not in my notes. The Mr. Downing stated, I was thinking of filing a separate motion away from that motion there. And he was put on notice yet again during that hearing on May 15th of 1997 that DNA expert hadn't been addressed. If he wanted to, it needed to be addressed, and it was not addressed. It's never been addressed by Mr. Downing in this case. If the Court has no further questions, I will take my seat. Thank you. Thank you, Your Honor. We'll give you a minute, Mr. Lane. Thanks. I don't think I'll need to take that long, Judge Pertterson. I just wanted to respond quickly to Judge Kleinfeld. Unfortunately, Exhibit 27 was not excerpted. That's my fault. It should have been. It's about a five-page hearing transcript, but it's Exhibit 27 to the first amended petition. And I believe that was the clerk's record 40. Excuse me. With regard to fact-finding deference to State courts, I don't think that this case has anything to do with fact-finding deference. This is a pure question of law. Was the bar an adequate bar? Was it well-established? Was it consistently applied? With regard to any fact-finding that the Nevada Supreme Court may have done, they did drop a footnote, and that's at page 121 of the excerpts of record, where they speculated that trial counsel may have decided not to pursue the motion for tactical reasons, but there was nothing in the record to support that. And I just wanted to point that out, because I — you know, that's an inappropriate record. That's an inappropriate supposition for the — for a court of appeals to make, to make that kind of fact-finding when there was nothing in the record to support it. If the Court doesn't have any questions, that's all. Thank you very much. And the matter will stand submitted. And the next case in our calendar is Dukes. All right. Next one on our calendar is Juhasz versus Brannon. And that's submitted. Now we come to Betty Dukes versus Walmart, Inc. Thank you.
judges: Pregerson, Kleinfeld, Hawkins